**UNITED STATES of America ex rel. Steve SHORE, Petitioner–Appellant,**

**v.**

**Michael O'LEARY, Warden, Stateville Prison, Respondent–Appellee.**

**Nos. 86–1370 and 86–2341.**

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1987.

Decided Nov. 9, 1987.

Andrea Lyon, Cook County Public Defender, Chicago, Ill., for petitioner-appellant.

Arleen C. Anderson, Chicago, Ill., for respondent-appellee.

Before BAUER, Chief Judge, WOOD, Circuit Judge, and GRANT, Senior District Judge.*

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. Justice Sullivan delivered the 28–page opinion of the Illinois Appellate Court affirming Shore's conviction. Justice Mejda concurred in the opinion, but Justice Pincham presented a 50–page dissent in which he found the State's evidence unpersuasive, and the trial judge's errors grievous. Both the opinion and the dissent thoroughly review the testimony presented by the witnesses and the questions and comments of the trial judge, as reported in the transcripts of the trial and the later hearing on the motion to reopen.

GRANT, Senior District Judge.

Petitioner-appellant Steve Shore was convicted of felony murder at a bench trial in the Circuit Court of Cook County, Illinois. Following the denial of his post-trial motion to reopen the case, the trial court sentenced Shore to a prison term of thirty-five years. After exhausting his state court remedies, Shore petitioned the United States District Court for the Northern District of Illinois for habeas corpus relief pursuant to 28 U.S.C. § 2254. His petition was denied. We affirm.

I. *Background*

The facts of this case have been recorded fully in the reported opinion of the Illinois Court of Appeals, which affirmed Shore's conviction. *See People v. Shore,* 129 Ill. App.3d 443, 84 Ill.Dec. 552, 472 N.E.2d 512 (1st Dist.1984).[1] The habeas corpus statute requires us to presume the correctness of the findings of fact of state courts. 28 U.S.C. § 2254(d);[2] *Sumner v. Mata,* 455 U.S. 591, 597–98, 102 S.Ct. 1303, 1307, 71 L.Ed.2d 480 (1982); *United States ex rel. Kosik v. Napoli,* 814 F.2d 1151, 1153 (7th Cir.1987). Accordingly, we begin with the assumption that those reported facts are accurate, and will detail only the facts necessary to the appeal before us.

The charge against Shore grew out of an incident occurring shortly after midnight on August 10, 1982. A uniformed security guard walking on Chicago's Drexel Avenue was shot twice in the chest, and his gun was stolen. The guard died from the

2. Title 28, § 2254(d) provides:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, ...

wounds, and Shore was charged with his murder.

At the bench trial, there were three eyewitnesses to the shooting. Two former El Rukn gang members testified for the State that they, the petitioner and several others were drinking and smoking marijuana on Drexel Avenue for four or five hours, and that Shore said, "I am fitting to get this chump," when he saw the guard walking across the street. Both testified that Shore ran across the street holding his gun, shot the guard twice in the chest, and took the victim's revolver. Afterwards he declared to them, "I got this chump." The third eyewitness, called by the defense, testified that he saw the shooting as he was driving down Drexel. He described the assailant as a black man with a dark tan complexion and short hair, about eighteen or nineteen years old, five feet eight or nine inches and 140–150 pounds. (The record states that Steve Shore is "six feet tall, 175 pounds, twenty years of age, medium to light complexion.") When questioned by the judge, the witness added that he looked at the assailant about five minutes from about 200 feet away, at night, and that he saw only his right profile. He did not identify Steve Shore in a lineup or in court as the assailant. Other witnesses for the State bolstered the testimony of the eyewitnesses. The defense witnesses attacked the credibility of the ex-gang members by testifying to threats made by them against Shore's family. The trial judge actively participated in the questioning of witnesses, and, after the closing arguments, continued the cause in order to review his notes before making his determination.

At the sentencing hearing, the judge entered a finding of guilty, based upon the following evidence: (1) the uncontradicted testimony that Shore (and no one else) was seen with a gun very near the scene of the crime; (2) the eyewitness testimony of the two State witnesses; (3) the lack of proof of their bias or motives; and (4) the corroboration of their account by other witnesses who identified, among other things, the place of recovery of the gun and the location of the bullet wounds. The judge then continued the case again for post-trial motions and sentencing.

Counsel for Shore filed a motion to reopen the evidence in the case in order to allow additional testimony. At the hearing on the motion, Shore's attorney described Shore's "very real fear of reprisals against him" by gang members. Because of that fear, Shore told his attorney of his actual whereabouts on the night of the murder only after the jury waiver had been executed and the trial had begun. The Assistant State's Attorney responded that Shore had knowingly chosen to waive both a jury trial and appearance at trial on his own behalf. The court noted that the defendant had allowed the entire trial to proceed without bringing forth this evidence, but nevertheless allowed an offer of proof to be made. Nine days later the court heard the testimony of Steve Shore and of Robert Clark, who both testified that they were riding bicycles down Drexel Avenue, heard the shots, and witnessed the scene following the shooting. Shore identified one of the two men running away as one of the State's eyewitnesses. Cross-examination and recross were conducted; both counsel made closing arguments and responded to the court's questions. After taking the motion under advisement, the court ruled, a week later, denying the motion to reopen evidence. At that time, the judge reviewed the evidence presented during the offer of proof and analyzed its credibility. He then turned to the trial evidence to review the credibility of the testimony given, and stated for the record which witnesses he believed. He specifically noted that he found the testimony of the two State's eyewitnesses to be believable, and also believed the defense witness, but found that his testimony was not sufficiently conclusive to be helpful in the determination. In concluding, he held that the felony murder finding of guilty would stand.

On appeal, the Illinois Appellate Court carefully considered the entire record and confirmed the conviction; however, the dissent was vehement in asserting that the evidence at trial was insufficient and that the trial judge was in error in his determinations. Nevertheless, the conviction was

upheld by the Illinois Supreme Court. Having exhausted his state remedies, the petitioner turned to the federal courts. His writ of habeas corpus was denied by the United States District Court. It is the appeal of the district court's ruling that is now before us.

## II. *The Determination of the District Court*

In an independent review of the state court record, the district court weighed the sufficiency of the evidence presented at trial. While admitting the temptation to substitute its judgment for that of the trial court, the district court made clear that its role as a reviewing court demanded a strict standard of review: it could overturn the determination of the trial court only if "no rational trier of fact could have found proof beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979). With that limitation, the district court reviewed the witnesses in light of their testimony and impeachments, and concluded that a rational trier of fact could have believed the state's witnesses and disbelieved the defense witnesses.

The district court found no merit in the petitioner's claim that the trial judge erred in commenting on Shore's silence at trial. Citing *United States ex rel. Guillen v. DeRobertis,* 580 F.Supp. 1551, 1555–56 (N.D.Ill.1984), the court recognized that there was no constitutional right to reopen a case after trial and a finding of guilty for a reconsideration of evidence. Furthermore, because the defense raised the issue of Shore's silence at trial in order to justify his request to be heard after his conviction, the trial judge had the right to consider that silence in determining whether special circumstances were in fact present that warranted a reopening. The district court concluded that, because it found no constitutional infirmity in the petitioner's conviction, his petition for a writ of habeas corpus must be denied.

In this appeal, the petitioner again raises the question of the sufficiency of the evidence, asserting that the State's witnesses were impeached by demonstrations of their bias and motives and by contradictions and inconsistencies in their statements. He insists that the testimony of defense witnesses, including the only witness to the shooting without cause for bias, undermined the State's case. And he contends that the statements made by the trial judge in analyzing the evidence were not supported by the record. The petitioner offers as a new standard for review a "harmful" error analysis and requests a new trial.

## III. *Standard of Review: Sufficiency of the Evidence*

In a review of the sufficiency of the evidence to support a conviction, the standard clearly established by the Supreme Court, and followed by this circuit, is whether, "after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. at 319, 99 S.Ct. at 2789; *Woodruff v. Lane,* 818 F.2d 1369, 1374 (7th Cir.1987); *United States v. Draiman,* 784 F.2d 248, 251 (7th Cir.1986).

■ However, the petitioner suggests that, because two of the four judges to review this case "stated that they would acquit Mr. Shore,"[3] his trial should be considered under a "harmful" error analysis.[4]

---

**3.** Petitioner reads too broadly the district court's comment in dictum that "this court has little doubt that if this case were retried, a new trier of fact might acquit." Despite its tendency to hypothesize, were it in the role of trial court, the district court nevertheless was mindful of its limited task when reviewing the evidence.

**4.** Petitioner points to three "harmful errors" of the trial judge and asks us, under this analysis, to find that the judgment was substantially swayed by those errors. Having found none of

the judge's actions to be in error, we mention them only summarily: (a) Nothing in the record indicates that the trial court shifted the burden of proof to the petitioner. In offering a motion to reopen the evidence, however, the petitioner certainly was required to state the grounds upon which it was made. Fed.R.Crim.P. 47. *See, e.g., United States ex rel. Guillen v. DeRobertis,* 580 F.Supp. 1551, 1556 (N.D.Ill.1984) (habeas petitioner has burden of proof when alleging perjured testimony in a post-conviction petition).

Petitioner admits that no court has used such an analysis, but offers this court a suggestion of the type of test it should be:

> The applicable test for prejudice is whether we can say, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." The decisive factors are the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error.

*Gaither v. United States*, 413 F.2d 1061, 1079 (D.C.Cir.1969).

The above case, from another circuit, concerning the dismissal of an indictment for grand larceny, cannot in any way be construed to be applicable to the instant habeas proceeding. Nor can the above-mentioned test, which determined whether prosecutorial misstatements prejudiced appellants, apply herein.

■ One foundation block of our judicial system is the principle of *stare decisis,* which demands adherence to precedents. Decisions are made in accord with previous authoritative decisions in similar cases emanating from one's own circuit and from the Supreme Court. A lower court owes deference to those above it; ordinarily it has no authority to reject a doctrine developed by a higher court. *See, e.g., Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.,* 460 U.S. 533, 535, 103 S.Ct. 1343, 1344, 75 L.Ed.2d 260 (1983) (per curiam); *Perri v. Director, Dept. of Corrections of Ill.,* 817 F.2d 448, 451 n. 4 (7th Cir.1987).

Accordingly, the standard of review set forth by the Supreme Court in *Jackson v. Virginia* and applied consistently by this circuit in determining evidentiary sufficiency will be applied herein. We can overturn the conviction only if *no* rational trier of fact could have found proof beyond a reasonable doubt. *Jackson,* 443 U.S. at 324, 99 S.Ct. at 2791. Furthermore, we are

required to accept and defer to the presumption that the trial court resolved any facts that support conflicting inferences in favor of the State. *Id.* at 326, 99 S.Ct. at 2792.

■ After reviewing the entire record, we must agree with the district court that the trial court's assessment of witness credibility was not irrational. The province of credibility determination is reserved for the trial court; its factfinding determination is entitled to a presumption of correctness. *Sumner v. Mata,* 449 U.S. 539, 550, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981).

> The findings of fact of state courts in habeas actions shall be presumed to be correct unless the federal court, on consideration of the record as a whole, concludes that such factual determinations are not "fairly supported" by the record. 28 U.S.C. § 2254(d)(8). That rule applies equally to findings of trial courts and appellate courts. *Sumner v. Mata,* 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981) (per curiam); *Wainwright v. Goode,* 464 U.S. 78, 104 S.Ct. 378, 382, 78 L.Ed.2d 187 (1983).... The statute requires the federal courts to show a "high measure of deference" to the fact-findings made by the state courts. *Sumner,* 455 U.S. at 598, 102 S.Ct. at 1307.

*Burns v. Clusen,* 798 F.2d 931, 940 (7th Cir.1986).

The trial judge gave wide latitude in allowing testimony both at trial and at the post-trial hearing on the motion to reopen. His questions to witnesses were unbiased and perceptive. Likewise, he allowed defense counsel much latitude in presenting as an offer of proof the very testimony she wanted to include as additional testimony at trial. The decision to deny the motion to reopen was within the judge's sound discretion. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 331, 91 S.Ct. 795, 803, 28 L.Ed.2d 77 (1971); *Mumford v.*

---

(b) Petitioner's references to the trial judge's feelings and the tenor of his remarks are inappropriate and not substantiated by the record.
(c) The trial court did indeed refer to Shore's "privileged" communication with his attorney

concerning Shore's fear of the El Rukn gang. Once that fear was proffered by petitioner's counsel as the justification for requesting the reopening of the case, it was proper for the judge to weigh the credibility of that evidence.

*Bowen,* 814 F.2d 328, 329 (7th Cir.1986). We find no abuse of that discretion.

The trial court heard the testimony, observed the demeanor of the witnesses, and determined the weight to be given to the testimony. In this case much of the evidence was conflicting and some was discredited. It is the prerogative of the trier of fact to ascertain the truth and to determine which testimony is credible. We cannot say that the court's determinations of credibility were erroneous. Thus, we hold that there was sufficient believable evidence presented to the court to support a finding of guilt beyond a reasonable doubt.

■ We further note that evidentiary error at the trial court level must rise to the level of constitutional injustice before the appellate court will intervene.

Ordinarily, an evidentiary error in the state courts will not rise to the level of a constitutional violation. As this court has explained, "Because the admissibility of evidence in state court is a matter of state law, evidentiary questions are not subject to federal review under § 2254 unless there is a resultant denial of fundamental fairness or the denial of a specific constitutional right." *United States ex rel. DiGiacomo v. Franzen,* 680 F.2d 515, 517 (7th Cir.1982).

*Burrus v. Young,* 808 F.2d 578, 580–81 (7th Cir.1986). We find no denial of a constitutional right in this record. Petitioner's assertions of the abrogation of due process and fair trial are conclusory and unsubstantiated by the record. Repetition to this court of the dissenting opinion of the state appellate judge does not make the argument more persuasive.

In summary, we reiterate the prohibition against an appellate review of credibility, *United States v. Tanner,* 471 F.2d 128, 135 (7th Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972), and uphold the long-established principles that veracity of a witness be tested by cross-examination and credibility of a witness be determined by the trier of fact. *Hoffa v. United States,* 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374 (1966). We hold that, based on the evidence presented at trial, and viewing it in the light most favorable to the

State, a rational trier of fact could have found that there was sufficient evidence to find the petitioner Shore guilty beyond a reasonable doubt. *See United States v. Allen,* 797 F.2d 1395, 1399 (7th Cir.), *cert. denied,* ——— U.S. ———, 107 S.Ct. 196, 93 L.Ed.2d 128 (1986).

### IV. *New Trial*

"In light of the closeness of the case under any analysis," the petitioner seeks a new trial. The Supreme Court enunciated in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) the standard for determining whether a federal court should reconsider evidence weighed by a state court:

Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding. In other words, a federal evidentiary hearing is required unless the state court trier of fact has after a full hearing reliably found the relevant facts.

*Id.* at 312–13, 83 S.Ct. at 757. Because the test for a new trial differs from the test for sufficiency of evidence, we will consider the possibility that the evidence must be heard in a federal forum.

The *Townsend* Court delineated the circumstances under which a federal court must grant an evidentiary hearing:

If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Townsend,* 372 U.S. at 313, 83 S.Ct. at 757.

Of these circumstances, we must examine only two: whether there was newly

discovered evidence, and whether the state court provided a full and fair hearing.

■ In his motion to reopen, petitioner used a version of the "newly discovered evidence" rule to argue for reopening his trial. The facts he wished to present were "newly discovered" during the trial, since they were revealed to counsel only after trial had begun. However, "newly discovered evidence" has a well-settled meaning; it is evidence which could not reasonably have been presented by the petitioner in the earlier proceeding. *Townsend v. Sain,* 372 U.S. at 317, 83 S.Ct. at 759. By definition such evidence existed at an earlier time; thus, one must inquire "whether the petitioner *reasonably* either did not know about it or could not have presented it at an earlier proceeding." *Id.* Petitioner certainly knew these facts before the trial; he asserted, however, that fear prevented him from offering the evidence at trial. The trial court rejected that explanation, and we agree with that conclusion. His appearance before a judge rather than a jury could have been protected. His sisters testified to threats against petitioner's family; his testimony could have shed more light on his defense. We find that it was not possible that petitioner *reasonably* could not have presented his own evidence at an earlier proceeding. Accordingly, no federal fact-finding is mandated because there is no new evidence to review.

■ We must also inquire whether it appeared for any reason that the state trier of fact did not provide Shore a full and fair fact hearing. "The duty to try the facts anew exists in every case in which the state court has not after a full hearing reliably found the relevant facts." *Id.* at 318, 83 S.Ct. at 759. However, if the state record provided all the necessary information for a satisfactory determination of the issues raised in the petition, then an evidentiary hearing is not required. *Id.*

■ The state court allowed full testimony and evidence both at trial and at the post-trial hearing. Neither in its factfinding procedures nor in any other circumstance do we find that the state court did not afford the petitioner a full and fair hearing.

Under the habeas corpus statute, if none of the above circumstances exists, the state court determination shall be presumed correct. 28 U.S.C. § 2254(d). Thus we find that, in the circumstances of this case, no federal evidentiary hearing is mandated under the principles of *Townsend. See Cartee v. Nix,* 803 F.2d 296, 298–99 (7th Cir. 1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1584, 94 L.Ed.2d 774 (1987).

### V. *Conclusion*

■ We hold that Steve Shore has failed to establish any violation of his constitutional rights. The fourteenth amendment guarantees of due process and fundamental fairness in a criminal trial are not guarantees that credibility determinations can be reweighed or that supplementary evidence can be brought into the case after conviction. There was sufficient evidence for a rational trier of fact to find the petitioner guilty beyond a reasonable doubt. And no rehearing of the facts of this cause is required in the federal forum because none of the *Townsend* factors mandating a new trial is evident.

For these reasons, the district court's denial of Steve Shore's petition for writ of habeas corpus is AFFIRMED.